FILED

UNITED STATES DISTRICT COURT

DEC 1 2 2006

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated and derivatively on behalf of NORTHWESTERN CORPORATION, d/b/a NORTHWESTERN ENERGY, <br><br>Plaintiff, <br><br>-vs- <br><br>MICHAEL J. HANSON; E. LINN DRAPER, JR.; STEPHEN P. ADKI; JON S. FOSSEL; JULIA L. JOHNSON; PHILLIP L. MASLOWE; and D. LOUIS PEOPLES, <br><br>Defendants, <br><br>and <br><br>NORTHWESTERN CORPORATION, d/b/a NORTHWESTERN ENERGY, a Delaware corporation, <br><br>Nominal Defendant. | CIV 05-4178 <br><br><br><br><br><br><br><br><br><br>AMENDED <br>MEMORANDUM OPINION <br>AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendants' Motion to Certify Mandatory Settlement Class, Doc. 369. Pursuant to the Stipulation of Settlement filed with the Court, Doc. 368, Plaintiff agreed not to contest Defendants' certification motion. (Doc. 368 at ¶ 2.2.) The trial on Plaintiff's injunctive relief claims was scheduled to begin earlier this year. Pursuant to motions for continuances, the trial was delayed, and was scheduled for August 8, 2006. The parties then entered a Stipulation Regarding Cancellation of Trial, Doc. 364, which was granted by the Court because the parties had reached a Memorandum of Understanding and they were in the process of drafting a Settlement

Agreement. The parties have filed the Stipulation of Settlement, Doc. 368, and Defendants seek to certify a class for purposes of the settlement.

## BACKGROUND

Plaintiff initially sought an injunction in this action to prevent the Defendants, the Board of Directors ("the Board") of NorthWestern Corporation ("NorthWestern"), from continuing defensive measures to block bids to purchase NorthWestern. Two offers had been made to NorthWestern before this action was filed. Montana Public Power, Inc. ("MPPI"), offered to purchase NorthWestern in an all-cash deal that would have delivered a 12% premium to the Company's shareholders at the relevant time. Black Hills Corporation ("Black Hills") proposed a stock-for-stock merger, which would have, in Plaintiff's opinion, resulted in NorthWestern's shareholders receiving a 14% to 20% premium.

In response to the offers by MPPI and Black Hills, the Board took two defensive measures: (i) adopted a shareholder rights plan, commonly referred to as a "poison pill" on December 5, 2005; and (ii) conditioned the bidders' opportunity to conduct due diligence upon the signing of a standstill agreement. In its initial complaint, Plaintiff maintained that the Board's defensive actions violated the fiduciary duties of loyalty, good faith and care to NorthWestern and its shareholders. Subsequent events altered the Plaintiff's claims, however, and it filed a Second Amended Complaint.

After the adoption of the poison pill on December 5, 2005, the Board directed investment banker Credit Suisse to find potential acquirers and interest them in participating in a bidding process. In January 2006, Credit Suisse contacted 23 parties to solicit proposals. Ten of those parties executed confidentiality agreements, which allowed them to conduct due diligence. Over 1,000 NorthWestern documents were made available to the bidders. Credit Suisse and NorthWestern employees also provided 800 responses to data requests from the bidders. Eight of the ten bidders submitted "indications of interest."

2

Initial non-binding offers were submitted on or about March 1, 2006. Six of the ten bidders continued in the bidding process and conducted further due diligence, as well as had visits with NorthWestern employees to answer questions. On April 10 and 11, 2006, five bidders submitted proposals. Babcock & Brown Infrastructure Limited ("BBI"), and two other bidders submitted bids for the entire company. Another bidder offered to purchase the Montana assets only and yet another bidder offered to purchase only the South Dakota and Nebraska assets.

Comparison analyses were prepared by Credit Suisse, Manatt Phelps & Phillips LLP, NorthWestern's legal advisors and Balhoff & Rowe LLC, a regulatory consulting group. In an effort to improve the bids, the Board directed Credit Suisse to meet with each bidder. This effort resulted in BBI and two of the other bidders submitting bids that were higher than their initial bids. Two other bidders were allowed to submit a joint proposal for the entire company because each had offered to buy only parts of NorthWestern.

Once the final bids were submitted, the Board sought advice from legal, financial and regulatory experts in comparing the bids. Credit Suisse prepared several comparisons of the bids, detailing the advantages and disadvantages of each offer. The regulatory aspects of the bids were evaluated by Balhoff & Rowe. Manatt Phelps analyzed the purchase and sale agreements proposed by each of the bidders.

After the Board considered the final bids and the comparisons provided by Credit Suisse, Balhoff & Rowe and Manatt Phelps, NorthWestern announced on April 25, 2006 that the winning bid was submitted by BBI. BBI's offer was $37 cash for each share of NorthWestern stock. Another cash offer was $36.25. Another bidder offered two options: (1) 30% cash/70% stock, which was valued at $33.88 based upon the April 20 stock prices; or (2) 50% cash/50% stock, which was valued at $34.20, based on April 20 stock prices. The Board entered into a Merger Agreement with BBI.

As part of the Merger Agreement with BBI, the Board agreed to keep the poison pill in place, but made it inapplicable to the agreement with BBI. Plaintiff contends this is a "deal protection

3

device that precludes any competing offer that presents greater value for North Western's shareholders." (Second Amended Complaint, Doc. 277, ¶ 4.) The Second Amended Complaint further alleges that, "[d]espite [the] fact that other potentially higher offers were on the table, defendants chose the offer from [BBI] in order to secure and preserve material benefits for Company insiders." *Id.* at ¶ 119.

In its Second Amended Complaint, Plaintiff seeks preliminary and injunctive relief: (1) declaring this action is properly maintainable as a class and derivative action; (2) declaring and decreeing that the agreement with BBI was entered into in breach of the fiduciary duties of Defendants via an unfair process, including an improper lock-up device in the form of the poison pill; (3) enjoining Defendants from holding a shareholder vote or taking other steps to consummate the agreement with BBI, unless and until they remove all improper barriers to higher offers, including the poison pill, disclose all material information to NorthWestern's shareholders and adopt and implement a procedure or process to obtain the highest possible price for shareholders, all sufficiently in advance of the shareholder vote on the agreement with BBI to prevent any harm to NorthWestern and its shareholders; (4) directing Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of NorthWestern and its shareholders; (5) directing Defendants to disclose to shareholders all material information in connection with the agreement with BBI; (6) rescinding or invalidating the poison pill; (7) rescinding, to the extent already implemented, the agreement with BBI; (8) imposing a constructive trust, in favor of Plaintiff, upon any benefits improperly received by Defendants as a result of their wrongful conduct; and (9) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees.

## DECISION

When properly maintained, a class action promotes judicial efficiency and, in addition, may provide a remedy to persons for whom it would not be economically feasible to obtain relief individually. *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980). To bring a class action under the Federal Rules of Civil Procedure, a plaintiff must meet both the general

prerequisites for class actions in Rule 23(a) as well as the requirements in one of the subsections of Rule 23(b). Fed R.Civ.P. 23. Due to the Stipulation of Settlement in this case, Defendants, rather than the Plaintiff, are making the motion to certify a mandatory class in this case for settlement purposes only.

Defendants seek certification of a mandatory settlement class under either Rule 23(b)(1)(A) or Rule 23(b)(2). The definition of the class sought to be certified, which will be referred to as the "Settlement Class" in this opinion, is: all Persons who owned shares in NorthWestern during the period from January 1, 2005 through August 2, 2006, inclusive, and their past, present, and future transferees, successors, receivers, assigns, heirs, executors, administrators, agents, and representatives. Excluded from the Class are (i) Defendants; (ii) members of the immediate families of each of the Individual Defendants; (iii) any entity in which any Defendant has or had a controlling interest; and (iv) the legal representatives, heirs, successors, or assigns of any such excluded person or entity.

> Rule 23(a) lists four prerequisites for maintenance of a class action:
>
> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These prerequisites are usually referred to as numerosity, commonality, typicality, and adequacy of representation.

The Settlement Class in this case easily satisfies the numerosity requirement. There are approximately 35.5 million NorthWestern shares outstanding, making joinder of the owners of such shares impracticable. As explained above, the questions of law and fact presented by the Plaintiff in this case are common to the class members as owners of NorthWestern shares. As to the typicality requirement, the Plaintiff's claims as stated in the Second Amended Complaint are typical of the Settlement Class members' claims because the poison pill adopted by the Board applies to all

outstanding shares of NorthWestern and the negotiations with BBI affect all NorthWestern shareholders in the same manner as Plaintiff. Finally, Plaintiff has demonstrated that it will fairly and adequately protect the interests of the class in this litigation. Thus, the Court finds that the four prerequisites for certification under Rule 23(a) have been satisfied.

In addition to meeting the prerequisites for certification under Rule 23(a), the action must be certifiable under one of the subsections in Rule 23(b). Defendants seek to have this action certified under either Rule 23(b)(2) or (b)(1)(A). The subsection under which an action is properly certified depends upon the type of relief being sought in the action. An action certified under Rule 23(b)(1) "encompasses cases in which the defendant is obliged to treat class members alike or where class members are making claims against a fund insufficient to satisfy all of the claims." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998). A Rule 23(b)(2) class action "was intended to focus on cases where broad, class-wide injunctive or declaratory relief is necessary." *Id.* The final subsection is (b)(3), which "was intended to dispose of all other cases in which a class action would be 'convenient and desirable,' including those involving large-scale, complex litigation for money damages." *Id.* (citations omitted). The Eighth Circuit explained that, "[w]hen either subsection (b)(1) or (b)(2) is applicable ... (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995).

The Eighth Circuit further explained that "[c]ertification is appropriate under subsection (b)(2) if class-wide injunctive relief is sought when the defendant 'has acted or refused to act on grounds generally applicable to the class.'" *DeBoer*, 64 F.3d at 1175 (quoting Fed.R.Civ.P. 23(b)(2)). Moreover, "'[t]he fact that [damages were] sought incidentally to the prayer for injunctive relief does not affect this result.'" *Id.* (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). In the present action, the primary relief sought by Plaintiff in the Second Amended Complaint is injunctive in nature. The prayer for relief in the Second Amended Complaint lists several forms of preliminary and permanent injunctive relief sought by Plaintiff, including enjoining Defendants from consummating the agreement with BBI until certain conditions are met. The request for a

constructive trust is incidental to the injunctive relief sought by Plaintiff. Moreover, the injunctive relief requested by Plaintiff applies to all members of the Settlement Class, because the actions sought to be enjoined and the actions Plaintiff seeks to require Defendants to perform are generally applicable to the Settlement Class members. If it were not for events that occurred after the filing of the Second Amended Complaint and the inadequacy of relief provided in the Stipulation of Settlement, Doc. 368, based upon the above discussion concerning requirements for class certification, the Court would have found that the requested class would have properly been certified under Rule 23(b)(2).

One of the subsequent events is that the shareholders have approved the sale to BBI and it has received partial regulatory approval. There has been no showing that the necessary additional regulatory approval will be denied. Thus, Plaintiff's request for injunctive relief to enjoin Defendants from holding a shareholder vote or from taking other steps to consummate the agreement with BBI is moot. Moreover, it does not appear that Plaintiff desires to pursue its request for relief to rescind the agreement with BBI.

After reviewing the parties' Stipulation of Settlement and Defendants' Motion to Certify Mandatory Settlement Class, the Court ordered that the parties submit responses to the Court's concerns set forth in an Order, Doc. 373, dated October 20, 2006, regarding the fairness, reasonableness and adequacy of the Stipulation of Settlement and about the propriety of certifying a class for settlement purposes. The Court has considered the responses filed by the parties (Docs. 374, 375, 377 and 378).

The Court expressed a concern in its October 20 Order that the purported benefit to the putative class regarding future stockholder rights plans adopted by NorthWestern's Board of Directors is illusory rather than real as the limitation on future stockholder rights plans is not applicable to BBI. It was also stated that the shareholders have already received whatever benefit they will receive from Plaintiff's lawsuit and that a mandatory class certification at this point can be roughly analogized to a quiet title action concerning real property in that once completed it

7

eliminates all present and future claims that could be brought for events taking place up to the date of a judgment.

Defendants admit that the provisions in the settlement relating to termination of the poison pill provide the shareholders with no meaningful benefits. They argue, however, that certification of a mandatory class does benefit the shareholders by ending this litigation, by preventing further legal expenses, and providing insurance against future similar strike suits. In their argument that this settlement would prevent further legal expenses, Defendants do not address the additional costs that would be associated with class certification, including the substantial costs in providing notice to NorthWestern's shareholders. Defendants further agree with the Court's observation that the situation in this case is analogous to a quiet title action, but they contend the shareholders will benefit by such an action by preventing future claims by other class members.

The likelihood of any such meritorious claim being brought appears to be minimal. It appears that the benefit to proposed class shareholders from a class certification is at this point minimal if not non-existent.

Plaintiff's view is that class certification and the concomitant release of class claims is no longer necessary or desirable given the status of the merger.

It appears to the Court, although no final ruling is being made on the issue, that the issues set forth in Plaintiff's Second Amended Complaint are now moot, and the only remaining issue is whether attorney's fees should be awarded to Plaintiff's counsel and, if so, the amount thereof.

There is an additional consideration which also mitigates against class certification. Many proposed class members will take time to analyze the documents they will receive. Their response might well range from being puzzled to being upset since there really appears at this point to be nothing of real value in the settlement for them. Confidence of the public in class action proceedings should not be eroded any further than it is. Too many class action members receive a pittance while

8

they see that counsel has usually been paid handsomely. There is a separate social utility that is served by some class actions, but that factor might not often be considered by a disappointed shareholder. Accordingly, class actions that are essentially hollow should be avoided so that the public retains or grows its confidence in class actions and the legal system.

For the reasons set forth, the Court does not find it is appropriate to certify a mandatory settlement class. Accordingly,

    IT IS ORDERED that Defendants' Motion to Certify Mandatory Settlement Class, Doc. 369, is denied.

    Dated this 12th day of December, 2006.

                                  BY THE COURT:

                                  _____
                                  Lawrence L. Piersol
                                  United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
           DEPUTY