

FILE
MAR 04 2008
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated and derivatively on behalf of NORTHWESTERN CORPORATION, d/b/a NORTHWESTERN ENERGY, <br><br>Plaintiff, <br><br>-vs- <br><br>MICHAEL J. HANSON; E. LINN DRAPER, JR.; STEPHEN P. ADKI; JON S. FOSSEL; JULIA L. JOHNSON; PHILLIP L. MASLOWE; and D. LOUIS PEOPLES, <br><br>Defendants, <br><br>and <br><br>NORTHWESTERN CORPORATION, d/b/a NORTHWESTERN ENERGY, a Delaware corporation, <br><br>Nominal Defendant. | CIV 05-4178 <br><br><br><br><br><br><br><br><br><br>MEMORANDUM OPINION AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pursuant to a Stipulation, Doc. 382, and a subsequent Motion to Dismiss, Doc. 388, all of Plaintiff's claims in this action were dismissed with prejudice, with the exception of the claim for attorney's fees and expenses. (Order, Doc. 396.) Plaintiff filed a Motion for Attorney Fees, Doc. 402. The Court requested the parties to file additional briefs regarding the affect on the pending Motion for Attorney Fees of the subsequent Montana Public Service Commission's rejection of the Merger Agreement between NorthWestern and Babcock & Brown Infrastructure Ltd. ("BBI"). The parties have now filed their additional briefs, which have been considered by the Court in ruling on the motion. Based upon the written record in this action, and for the reasons set forth below, the pending Motion for Attorney Fees, Doc. 402, will be granted in part and denied in part.

Under Delaware law, attorney's fees and expenses may be awarded in corporate litigation pursuant to the "common corporate benefit" doctrine. *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 727 A.2d 844, 850 (Del.Ch. 1998). To be entitled to an award of fees under this doctrine, Plaintiff must show that: "(i) the suit was meritorious when filed; (ii) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (iii) the resulting corporate benefit was causally related to the lawsuit." *Id.* If a lawsuit becomes moot due to corporate action, however, "Delaware law imposes on [the corporate defendant] the burden of persuasion to show that no causal connection existed between the initiation of the suit and any later benefit to the stockholders." *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1080 (Del. 1997).

After the Court observed in an Order that, "[i]t appears to the Court, although no final ruling is being made on the issue, that the issues set forth in Plaintiff's Second Amended Complaint are now moot, and the only remaining issue is whether attorney's fees should be awarded to Plaintiff's counsel ..." (Doc. 381), the parties entered into a Stipulation agreeing that the only remaining issues in this case are whether Plaintiff is entitled to an award of attorney's fees and expenses and, if so, the amount of such fees and expenses. (Stipulation, Doc. 382.) Pursuant to the Stipulation, the parties agree the Defendants carry the burden of persuasion on the causation issue, but Plaintiff would continue to carry the burden of persuasion on the first two elements, which are that the suit was meritorious when filed and that the action producing benefit to NorthWestern was taken by the Defendants before a judicial resolution was achieved.

In their briefs regarding the attorney's fees motion, the parties generally address the benefits to the shareholders resulting from Plaintiff's initiation and prosecution of this lawsuit. One of the primary benefits Plaintiff contends resulted from the initiation of this lawsuit, was a Merger Agreement entered into between NorthWestern and BBI, which Plaintiff contends netted shareholders over $5 per share, and over $200 million in the aggregate, above the trading price of NorthWestern's stock at the time Plaintiff brought suit. After the briefing was complete, however, Defendants notified the Court that the Montana Public Service Commission voted unanimously to

reject the request by NorthWestern and BBI to approve BBI's acquisition of NorthWestern. (Defendants' Supplemental Filing, Doc. 427.) In light of this rejection, Defendants contend the BBI transaction cannot be viewed as benefitting NorthWestern's shareholders in deciding Plaintiff's pending Motion for Attorney Fees. (*Id.*). Plaintiff responds that although the BBI transaction was not closed, this litigation increased the market value of NorthWestern and allowed shareholders to sell their shares into the market at a premium while the merger approval was pending before regulatory bodies. Even though there would have been a window within which shareholders could have sold for a gain, that was a passing opportunity rather than the proposed sale which Plaintiff resisted. Accordingly, the Court does not agree with Plaintiff's position and it will not serve as a basis for any award of attorney fees in this case. To begin with, the lawsuit did not cause the BBI merger to come about. Plaintiffs did claim and resist entrenchment by the NorthWestern board, but that issue was not determined and the Court cannot resolve that claim one way or the other as it was not tried. The other problem with the interim market benefit claim is that whoever benefitted is no longer a shareholder to the extent they sold during the pendency of the merger. Non-selling shareholders would be paying this claimed benefit. In their January 23, 2008, filing, Plaintiff quotes from NorthWestern's October 31, 2007, Form 10-Q filing that they believe any award of attorney fees would be reimbursed by insurance proceeds. That may be so, but the Court has not considered that possible collateral source in determining whether to award attorney fees or the amount of such fees.

Plaintiff also contends that this litigation caused the redemption of the poison pill and enhanced corporate governance related to any future poison pills, including Defendants' agreement to allow shareholders to vote under certain conditions regarding future poison pills. NorthWestern's shareholders have gained some non-monetary benefit from the Plaintiff's effort to secure these agreements. *See Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D.Mo. 2005) (recognizing that, "[t]o be entitled to an award of attorneys' fees and expenses, plaintiffs' counsel need not confer a monetary benefit on the corporation, rather corporate governance reforms and other non-monetary relief are sufficient."). This benefit is now more significant since the BBI merger was not completed.

3

Another benefit Plaintiff asserts is that the litigation saved NorthWestern millions of dollars in advisor fees because one of Plaintiff's challenges in this action was to the Defendants' contract with financial advisor Credit Suisse. Now that the BBI transaction will not be completed, however, the savings touted by Plaintiff due to the restructuring have not been realized. Nevertheless, the Court finds the restructured contract with financial advisor Credit Suisse was renegotiated in part due to Plaintiff's efforts in this litigation and the restructured contract with Credit Suisse was beneficial to the shareholders.

The Court finds Plaintiff carried its burden to show this action was meritorious when filed and the above actions resulting in benefits to the shareholders were taken prior to a judicial resolution. The burden of persuasion then shifts to Defendants to establish a lack of a causal connection between the initiation of the lawsuit and the above benefits. The Court does not find that Defendants met their burden of persuasion. There were limited benefits achieved by Plaintiff in this litigation, however, which will result in a much lower award for attorney's fees than requested by Plaintiff.

It must not be forgotten that lawsuits of this type are contingent fee cases. Some such cases result in very large attorney fee awards, far in excess of normal hourly fees. Those fees, within the realm of reason, are the potential reward for undertaking difficult contingent fee cases that require substantial expertise, time and expense. The other side of contingent fee cases is sometimes no fee at all and a client that cannot pay the expenses incurred.

Plaintiff's total request is for $9,459,000 in fees and $419,942.71 in expenses. The attorneys spent 3,698.8 hours and Plaintiff requests rates ranging from $360 to $650 per hour for their work with the exception of local counsel's usually lesser rates. The Court does not find Plaintiff is entitled to any multiplier in this case due to the limited benefit to NorthWestern shareholders from this lawsuit. The Court will award attorney fees based on the lodestar, although at lower rates than requested by Plaintiff. The hourly rates sought by Plaintiff's counsel are too high, especially in consideration of the limited benefits the litigation brought shareholders. The Court does recognize and consider the skill that was necessary and was exhibited by Plaintiff's counsel in vigorously

pursuing their positions even though one of the positions was to initially resist the BBI purchase. In addition, Plaintiff did not supply the Court with information regarding the qualifications of the various persons working on this case. Based upon the considerations mentioned, the Court finds an appropriate hourly fee for the attorneys is $350 per hour.

Plaintiff also seeks an award for paralegals in the total amount of $146,485. The total number of hours worked by paralegals is 583.5 hours. The requested hourly rates for paralegals ranges from $240 to $270. These are excessive rates for paralegals. The Court finds an appropriate hourly rate for paralegals working on this case is $125. Thus, the total award for paralegals is $72,937.50.

An additional amount is requested for law clerks and professional staff. The hourly rates requested for these individuals range from $175 to $315. In the Time and Expense Chart attached as Exhibit E to Randall Baron's Declaration, Doc. 405, paralegals are identified, but law clerks and "professional staff" are not separately identified. It is assumed that "professional staff" refers in part to secretarial help, which is to be included in the hourly rate for attorneys. The Court made allowance for secretarial fees and other non-paralegal assistants in awarding $350 per hour for the attorneys' time. Also, the law clerks and whatever else might have been "professional staff" were not separately identified by Plaintiff and the Court will not award any separate fees for law clerks or "professional staff" in this case.

Based upon the above discussion, the award for attorney's fees in this case is $1,199,800 to Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP (3,428 hours x $350 per hour); $27,750 in fees and $365.00 in expenses to Dougherty & Dougherty, LLP (111 hours x their billed rate of $250.00 per hour); $28,160 in fees to VanOverbeke, Michaud & Timmony, P.C. (140.8 hours x their billed rate of $200 per hour); and $6,650 in fees and $100 in expenses to Provost & Humphrey, LLP (19 hours x $350 per hour); for fees totaling $1,262,360. The award for paralegals is $72,937.50 (583.5 hours x $125 per hour), for a total of $1,335,297.50 in fees.

5

Expenses in the amount of $419,942.71 are requested by Plaintiff. The expenses seem high but the Court recognizes that, to the credit of Plaintiff's counsel, much was done in a short time after filing the lawsuit, including numerous depositions. The Court cannot tell from the claimed expenses if that includes first class airfare. If it does that should not be allowed beyond coach rates. It is doubtful that the class members fly any way other than on coach so neither should their lawyers unless they want to personally pay the difference.

Defendants' Motion for Hearing, Doc. 420, will be denied. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Attorney's Fees, Doc. 402, is granted in part and denied in part. Plaintiff is awarded $1,335,297.50 in fees and $419,942.71 in expenses.

2. That Defendants' Motion for Hearing, Doc. 420, is denied.

Dated this 4th day of March, 2008.

BY THE COURT:

*Lawrence Piersol* (signature)

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *Shelly Marguilis* (signature)
    DEPUTY